## THE TERRITORY OF HAWAII *v.* A. H. DONDERO.

APPEAL FROM DISTRICT MAGISTRATE OF HONOLULU.

ARGUED JANUARY 29, 1912.        DECIDED FEBRUARY 13, 1912.

ROBERTSON, C.J., DE BOLT, J., AND CIRCUIT JUDGE ROBINSON IN PLACE OF PERRY, J.

MUNICIPAL CORPORATIONS—*powers of board—rules of procedure.*

A municipal board can neither enlarge nor restrict its charter powers. A so-called rule of procedure, which purports to restrict

the powers of the municipality is without force as against the validity of an ordinance passed in pursuance of statutory authority.

ID.—*rules not invoked—how waived.*

A municipal board may waive its rules of procedure, either by formal action, or by failure to invoke them, or by ignoring them, if no objection is interposed.

ID.—*ordinance, title of.*

The title of an ordinance is sufficient if it fairly indicates to the ordinary mind the general subject of the ordinance, is comprehensive enough to reasonably cover all its provisions, and is not calculated to mislead.

ID.—*ordinance in conflict with statute.*

No ordinance shall be held invalid on the ground that it covers any subject or matter embraced within any statute or statutes of the Territory, whether such ordinance is in conflict with any such statute or statutes or otherwise.

OPINION OF THE COURT BY DE BOLT, J.

The defendant was convicted and adjudged to pay a fine of fifteen dollars and costs by the district magistrate of Honolulu for the violation of section 29 of ordinance No. 11 of the City and County of Honolulu, the specific act of the defendant upon which the conviction was based being the operating of a motor car at a greater rate of speed than fifteen miles an hour within a restricted area in the City and County of Honolulu.

Upon conviction, the defendant appealed on points of law from the judgment of the district magistrate to this court. Three questions are presented by the appeal for our consideration, namely: (1) Is the ordinance void because passed in violation of section 2 of rule 20 of the rules of procedure of the board of supervisors of the City and County of Honolulu? (2) Is the ordinance void because in violation of section 15 of the charter of the City and County of Honolulu (Act 118, Laws of 1907), relating to the requirement that ordinances shall embrace but one subject which shall be expressed in the title? (3) Is the ordinance void because in conflict with sections 3115 and 3116 of the Revised Laws, as amended by Act 68 of the Laws of 1907, relating to the driving of vehicles? These questions will be considered in the order named.

Territory v. Dondero, 21 Haw. 19.

1. The first question for consideration involves the validity of the ordinance, because passed in violation of section 2 of rule 20 of the rules of procedure of the board of supervisors.

We wish, first, to observe with regard to this rule that it is not clear that it is judicially before us; however, we will assume for the purposes of this case, that it is properly before us.

Section 2 of the rule reads: "No ordinance shall be passed that is in conflict with the laws of the Territory and the rules and regulations of the Territorial board of health."

Assuming that the ordinance was passed in violation of the rule and is in conflict with the laws of the Territory, the point which the defendant seeks to make has no force; because, whatever power the City and County of Honolulu may desire to exercise must be looked for in its charter and legislative amendments thereto. The charter provides that the board shall "establish rules for its proceedings," but the rule in question does not purport to be a rule of procedure; it relates solely to the question of power, a subject which the board, as already suggested, is without authority either to enlarge or restrict, and which is governed entirely by legislative enactments. In *Ex parte Mayor of Albany,* 23 Wend. (N. Y.) 276, 279, the court said: "It is enough for us to see that the jurisdictional limits prescribed by the state law have not been overgone. The objection is entirely novel, that a by-law passed by a corporation, prescribing to itself certain conditions on which alone an improvement shall be undertaken, or any other regulation made by it, shall so hamper and cripple its powers, as to disable it from performing those duties enjoined or authorized by the law of the state. The latter is the charter, the constitution, the organic law of the city; and a by-law, which in terms restricts any of its provisions, is equally void, as if it sought to enlarge them."

It is fundamental that a municipality can neither enlarge nor restrict its charter powers. Statutory or charter regulations, being imposed by law, may not be either repealed, sus-

pended, or ignored by a municipal board.  28 Cyc. 333; *Carr* v. *City of St. Louis,* 9 Mo. 191; *State* v. *Archibald,* 5 N. D. 359, 378.  It is clear that the rule in question is without force as against the validity of the ordinance.  Assuming, however, the rule to be a mere rule of procedure, the record before us fails to show that it was invoked at any time during the consideration or passage of the ordinance, or that any objection was interposed to the passage of the ordinance on the ground that it was in violation of the rule.  It is almost uniformly held that a municipal board may waive or. suspend its rules of procedure.  Such waiver may be brought about either by formal action on the part of the board or by ignoring of the rules without objection.  If an ordinance is passed without violation of statutory requirements, but in violation merely of a rule of procedure, it will not be held invalid for that reason. 28 Cyc. 333; *City of Sedalia* v. *Scott,* 78 S. W. 276; *Holt* v. *City Council of Somerville,* 127 Mass. 408, 411.  Cushing, in his manual, "Law and. Procedure of Legislative Assemblies," sections 784, 1478, et seq., lays down the provision that rules, when they are not prescribed by any authority superior to the body adopting them, as in the case at bar, may be suspended by unanimous consent.  In section 794, the author says: "But, though it is essential to regularity of proceeding, that a legislative assembly should possess rules for its government, and that every member should have the right to insist upon their observance, yet a member may waive his right, and the assembly itself, on a proper occasion, may dispense with its own rules.  Hence it is an established practice, in all our legislative assemblies, to do any matter, or to take any course of proceeding, which is contrary to the rules, provided it is done by general consent; that is, no member interposing any objection."

The cases cited by the defendant on this question do not support his contention:  In *Erie R. R. Co.* v. *Patterson,* 76 Atl. 1065, the proceedings before the municipal council were for the purpose of opening a street which the court held imposed an

additional burden on the land adjacent and were judicial in character and were such that interested parties were entitled to a hearing, and such a hearing as would come within the definition of due process of law. The court said that the method adopted was well calculated to lull the interested parties into security and deprive them of the opportunity even to ask for a hearing. There was something deeper involved in that case than the mere question of waiver of rules. The particular rules prescribed were part of that "due process of law" necessary under the fifth amendment of the Constitution of the United States before an individual could be deprived of property or property rights. This "due process" as established, the interested parties had a right to rely on, and of course it could not be changed or ignored except in a formal manner and upon due notice to the interested parties. The syllabus of the opinion of the court in that case is as follows: "Where the rules of a public body require action at two regular meetings, and fixed the days for regular meetings, action had on a day not so fixed is nugatory, where the proceedings are judicial in character, although all the members of the Board have previously agreed to meet on the latter day. Such meeting is not a 'regular meeting.'" In *Hicks* v. *Long Branch Commission,* 69 N. J. L. 300, while it is true the court held, that a rule of the Long Branch Commission, that "on every vote relating to any special appropriation the yeas and nays shall be taken and recorded," is as binding on the commission as any statute, but an examination of the case will show that a compliance with this rule was called for when the resolution was put before the board, and there being objection interposed at the proper time there was of course no waiver. In *State* v. *Hoyt,* 2 Ore. 247, a councilman voted for himself for the office of marshal in violation of a rule prohibiting any interested party from voting for himself. This was clearly vicious and against public policy. The court said that he "should not be permitted to gain by his own wrong."

Therefore, whether we view the rule as an attempt to restrict

the power of the board, or as a mere rule of procedure, it is clear that the contention of the defendant upon this phase of the case is entirely without merit.

2. The next question for consideration is the contention of the defendant that the ordinance is void because in violation of section 15 of the charter of the City and County of Honolulu. Section 15 reads: "No ordinance shall embrace but one subject, which subject shall be expressed in its title. If any subject be embraced in an ordinance and not expressed in its title, such ordinance shall be void only as to so much thereof as is not expressed in its title."

The title of the ordinance is as follows: "An ordinance regulating moving travel and traffic upon the streets and other public places of the City and County of Honolulu, providing for the registration, identification, use and operation of motor cars, and providing penalties for any violation of the ordinance."

Section 29 of the ordinance reads: "It shall be unlawful for any person to ride, drive, propel, or operate any vehicle or vehicles upon the streets at a rate of speed greater than is reasonable and proper, having due regard to the traffic and use of the highways, or so as to imperil the life or limb of any person or the safety of any property. No person shall operate a motor car on any public street in the District of Honolulu at a rate of speed greater than twenty-five miles an hour, nor on any public street in said District within the area bounded on the makai side by the sea, on the Waikiki side by Kapiolani Street and Ward Street, and the extension of the line of Ward Street to the sea; on the mauka side by Vineyard Street and the extension of the line thereof to Kapiolani Street, and on the Ewa side by the Asylum Road and the extension of the line thereof to the sea, at a rate of speed greater than fifteen miles an hour; nor at any street crossing within said area at a greater speed than ten miles an hour; nor on the Pali Road between the Government Electric Light Station and the top of said Pali Road at a rate of speed greater than fifteen miles an hour, nor anywhere within

Territory v. Dondero, 21 Haw. 19.

the City and County of Honolulu, either within or without said area, at a rate of speed greater than is reasonable and proper, having regard to the width and grade of the highway, the grade of adjoining declivities and the traffic and occupation of the street by others; or so as to endanger the life or limb of any person or the safety of property."

As to the title of the ordinance, the defendant contends that it is double, that the expressions therein, namely, "regulating moving travel and traffic," and the provision, "for the registration, identification, use and operation of motor cars," are separate and distinct provisions, each expressing a single subject, and that, therefore, the ordinance is void. He also contends that, even though the title expresses but a single subject, many of the sections in the ordinance, including section 29 as to rate of speed which motor cars may maintain, go beyond the scope of the title; and, therefore, section 29 is inoperative.

We shall, first, consider the question as to the sufficiency of the title to the ordinance, and then, if the title shall be found sufficient, determine whether section 29 falls within the scope of the title.

It may be stated as a general proposition that the expression of subject in the title of an ordinance is sufficient if it calls attention to the general subject of the legislation. It is not necessary that the title refer to details within the general subject, nor those which may be reasonably considered as appropriately incident thereto, and the title is sufficient if it is germane to the one controlling subject of the ordinance. The crucial test of sufficiency of title is generally found in the answer to the question: Does the title tend to mislead or deceive the people or the municipal board as to the purpose or effect of the legislation, or to conceal or obscure the same? If it does, then the ordinance is void; if not, it is valid. 28 Cyc. 379, 380.

In *State* v. *Calloway,* 11 Idaho 719, 4 L. R. A. (N. S.) 109, the court, in construing an ordinance entitled: "An ordinance regulating the hours in which intoxicating liquors shall be

sold in Boise City, and for Sunday closing, and providing for a penalty for the sale thereof during prohibited hours," and which ordinance contained provisions relative to the locking and securing of doors, the sale of intoxicating liquors during certain prohibited hours, and the admission of persons into places where intoxicating liquors were sold during such prohibited hours, said: "The object and purpose of the title is to show the general character of the ordinance, so that any one may not be misled thereby. It is well settled that matters of detail need not be specified in the title, nor it need not catalogue all of the powers intended to be bestowed. (Citing cases.) The title is sufficient."

An ordinance of the City of St. Louis contained provisions relative to the sale of milk, its quality, its inspection, and requiring the registration of milk venders. The ordinance was entitled, "An ordinance to license and regulate the sale of milk and cream, to provide for the inspection thereof, and prescribe penalties to prevent the sale and distribution of any but pure, wholesome milk and cream, and to fix the minimum limit of its composition and defining its quality." The supreme court of Missouri, in construing this ordinance in the case of *St. Louis v. Liessing,* 190 Mo. 464, 1 L. R. A. (N. S.) 918, 925, said: "All the provisions of the ordinance are germane to the one subject of regulating the business of vending milk and cream, and the generality of the title is not an objection, so long as it is not made to cover legislation incongruous in itself. Sound policy and legislative convenience dictate a liberal construction of the title and subject-matter of enactments to maintain their validity. There is but one subject to this ordinance, and that is clearly expressed in the title."

As in the St. Louis ordinance, supra, requiring the registration of milk venders, so in the ordinance in the case at bar there are provisions requiring the registration and identification of motor cars. In the matter of regulating moving travel and traffic in populous communities, and upon crowded streets and

thoroughfares, the matter of registration is an important part of the regulation pertaining to the use, operation and speed of motor cars, because, without registration and provisions requiring the display of proper registered car numbers it would often be impossible to identify violaters of the ordinance, or to enforce its provisions. ·Obviously, the requirement for registration and identification of motor cars is germane to regulating moving travel and traffic; it is essential as well as incidental to the one controlling subject of the ordinance, without which the ordinance would be incomplete and difficult to enforce.

In *Village of St. Anthony* v. *Brandon,* 10 Idaho 205, the court held that the title to an ordinance, namely, "An ordinance regulating and licensing liquor dealers within the village of ¦St. Anthony," was sufficient, where the ordinance provided for the payment of a fixed sum for retail liquor dealers only, and prohibited the business of running a restaurant or lunch counter in connection therewith, or in the same room, and also required the doors to be closed on Sunday, and also prohibited music, singing and dancing in the room occupied as a saloon. The court said: "It is urged that this ordinance attempts to regulate other classes of business. We do not so construe its language. There is no attempt to regulate any business, except that of retail liquor dealers."

The title of a Baltimore city ordinance authorized the repaving of a street, declared that the paving should be done with asphalt, while the body of the ordinance contained a proviso permitting the use of vitrified brick in lieu of asphalt in the gutters and on such other portions of the street as, in the judgment of the city engineer, should be necessary or desirable. In *City of Baltimore* v. *Stewart,* 92 Md. 535, 48 Atl. 165, it was held that this title did not violate a provision of the city charter, declaring that the subject of every ordinance should be described in its title, since it was not necessary to specify matters of detail. In *City of St. Louis* .v.. *Weitzel,* 130 Mo. 600, 31 S. W. 1045, the court, construing a city ordinance entitled

"An ordinance regulating the keeping, storing and handling, and licensing the removal of garbage,  *  *  *  and to repeal" a prior ordinance on the same subject, "and prescribing the penalties for the violation thereof," said that this did not violate a charter provision that no bill should contain more than one subject, which should be clearly expressed in its title.  "If those words," the court says on page 616 of the decision, "only constitute one general subject, if they do not mislead as to what the bill contains, if they are not designed as a cover to vicious and incongruous legislation, then the title can stand on its own merits, is an honest title and does not impinge on constitutional prohibitions.  In the case of *St. Louis* v. *Grafeman Dairy Co.,* 1 L. R. A. (N. S.) 936, 939, it was held that a proviso requiring the registration of venders and the payment of a registration fee is within the title of an ordinance, "regulating the sale of milk and cream," the court in that connection expressing itself as follows:  "We have no hesitancy in holding that the statement, in so far as it charged a failure to pay the $1 registration and inspection fee, stated a good cause of action, and therefore the criminal court of correction erred in quashing the whole case; nor is this section obnoxious to the objection that it infringes the charter provisions requiring the subject-matter to be expressed in the title of the ordinance.  This provision of the ordinance is clearly within the title and germane to the one controlling subject of regulating the sale of milk and cream."  In the case at bar, unlike the case just cited, registration is specifically mentioned in the title as well as in the body of the ordinance.

The ordinance in question comprises forty-eight sections, and contains many provisions and matters of detail, including provisions for the registration, identification and speed of motor cars, the controlling subject of which ordinance is the regulation of moving travel and traffic upon the streets and other public places of the City and County of Honolulu.  Section 46 thereof provides that "any person who shall violate any of the pro-

visions of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by fine of not less than $5.00 nor more than $250.00, or by imprisonment for a term not exceeding ninety days, or both such fine and imprisonment." The punishment thus provided for is within the limits prescribed by the charter.

Upon this phase of the case, i. e., the sufficiency of the title of the ordinance, the defendant cites *Mo. Pac. Railway Co.* v. *City of Wyandotte,* 44 Kan. 32, and *Territory* v. *Furubayashi,* 20 Haw. 559. In the Kansas case, the title of the ordinance reads: "An ordinance extending the limits of the City of Wyandotte, Kansas, and appropriating funds to aid in building Riverview Bridge." The court said: "This much can be said about this particular city ordinance, beyond criticism or doubt. Both the title to and the body of the ordinance contain two separate, distinct and independent subjects, having no connection with each other, and as easily distinguishable from each other as is a stack of wheat from the Argentine smelter."

Under the authority of the *Furubayashi* case the defendant seeks to exclude section 29 from the ordinance and have it rendered inoperative on the theory that it treats of a matter not properly expressed in the title, namely, the lawful rate of speed for motor cars. It is difficult to perceive how the regulation of "moving travel and traffic" upon the streets does not necessarily have to do with the speed of the vehicles constituting such moving travel and traffic. The title clearly has reference to the use, movement and speed of motor cars. In the *Furubayashi* case we held: "It is sufficient if the title of an ordinance fairly indicates to the ordinary mind the general subject of the act, is comprehensive enough to reasonably cover all its provisions, and is not calculated to mislead; but an act which contains provisions neither suggested by the title, nor germane to the subject expressed therein, is, to that extent void."

We therefore conclude, as to this question, that the title of the ordinance is sufficient, that it expresses but one subject,

that all the provisions of section 29 fall within the scope of the title, and that every portion of the title and every provision of section 29 is germane to the one controlling subject of regulating moving travel and traffic upon the streets and public places of the City and County of Honolulu.

3.    The final question for consideration is the contention of the defendant that the ordinance is void because in conflict with sections 3115 and 3116 of the Revised Laws, which, as amended, read:

"Section 3115.   Furious or heedless; punishment.   Whoever furiously or heedlessly of the safety of others, rides any horse or other animal, or drives or conducts any carriage, wagon, buggy, omnibus, cart, bicycle, automobile, motor cycle, locomobile, or other vehicle, and thereby immediately endangers the personal safety of any person, shall be punished by a fine not less than five dollars nor exceeding five hundred.

"Section 3116.   Same.   Whoever furiously or heedlessly of the safety of others, rides any horse or other animal, or drives or conducts any carriage, wagon, buggy, omnibus, cart, bicycle, automobile, motor cycle, locomobile, or other vehicle, though at the time the personal safety of any person be not endangered thereby, shall be punished by fine not less than five dollars nor exceeding one hundred."

The defendant contends that the ordinance covers the same general ground that the statutory provisions, just quoted, cover and is in conflict with them.   Both, as he claims, are aimed at heedless driving.   He cites the case of the *Territory* v. *McCandless,* 18 Haw. 616, decided March 2, 1908, wherein it was held that "a county has no power to prohibit by ordinance an act already made penal by territorial statute."   "This," the defendant says in his brief, "would dispose of the present case were it not for certain subsequent legislation"—referring to section 3 of Act 79 and section 1 of Act 99, Laws of 1909; which, he contends, the legislature had no power to enact.   The statutory provisions referred to, and which we deem perfectly valid and within the power of the legislature to enact, provide that "No ordinance shall be held invalid on the ground that

it covers any subject or matter embraced within any statute or statutes of the Territory, whether such ordinance is in conflict with any such statute or statutes or otherwise."

The defendant further contends that, even though the statutory provisions just quoted are valid, the ordinance is void, because, as he argues, there is a lack of special legislative authority authorizing its passage. The deputy city and county attorney contends, however, that such special authority is to be found in paragraph 2 of section 23 of the charter, whereby the board of supervisors are empowered to ordain, make and enforce any ordinance "to regulate and control for any and every purpose, the use of the streets, highways, public thoroughfares, public places, alleys and sidewalks of said City and County," which, as he argues, when read in connection with the statutory provisions of 1909 as above quoted, relating to ordinances conflicting with statutes, shows the intention of the legislature beyond question. The *McCandless* case construed the County Act of 1905, section 62 of which expressly prohibited the passage of any ordinance "in conflict with the general laws of the Territory;" and, presumably, the enactment of the statutory provisions of 1909, as above quoted, was in response to the following language of the court as expressed in the decision in that case on page 623: "If they (ordinances) undertake to penalize acts already made penal by territorial law they should be authorized expressly or by necessary implication." Obviously, the legislature by these statutory provisions of 1909 intended to authorize the passage of ordinances such as the one now under consideration. We may, therefore, assume for the purposes of this case that the ordinance in question is in conflict with sections 3115 and 3116. The defendant, as already stated, questions the power of the legislature to authorize the passage of ordinances covering the same ground, or in conflict with, the general laws of the Territory.

Congress, by the Organic Act, has given the legislature of this Territory broad and comprehensive powers in the matter

of legislation. In *Castle* v. *Secretary of the Territory,* 16 Haw. 769, 777, this court said: "The grant of legislative power contained in the Organic Act includes 'all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable,' and expressly includes the power to 'create counties and town and city municipalities and provide for the government thereof.' There is no limitation upon this power except as found in the provisions of the Organic Act and in the Constitution."

Neither in the enactment of the statutory provisions of 1909, referred to, nor in the passage of the ordinance in question, was the Organic Act, nor any constitutional or other fundamental principle violated. We entertain no doubt but that the legislature has ample power to authorize the passage of ordinances such as the one now before us. And that the legislature by the statutory provisions referred to intended to authorize the passage of the ordinance in question is clear beyond question.

In *Haynes* v. *Cape May,* 50 N. J. L. 55, the court said: "There are circumstances under which the court will inquire into the reasonableness of ordinances passed by a municipal body under legislative powers granted to it." Those circumstances exist when the powers granted by the legislature are expressed in terms general and indefinite. But where the legislature has defined the delegated powers and prescribed with precision the penalties that may be imposed, an ordinance within the powers granted prescribing a penalty within the designated limit, cannot be set aside as unreasonable."

That the matter is one entirely controlled by the charter and rests entirely upon the ascertainment of the intention of the legislature is shown by the case of *Love* v. *Holmes* (Miss.), 44 So. 835. In that case it was held that a city operating under a special charter may, under the Mississippi Annotated Code of 1892, section 3039, as amended, authorizing such a city to amend its charter, providing the amendments are not

in conflict with the laws or Constitution of the United States or constitution of the State, though they are inconsistent with the code chapter entitled "Municipalities," adopt an amendment for the owning and operating by the city of an electric railway and for issuing bonds therefor. In commenting upon the fact that the action of the city was inconsistent with the state statutes, the court in that case said: "The act expressly provides that it may make amendments that are inconsistent with the chapter on 'Municipalities' as provided in the code."

In *People* v. *Earl,* 42 Colo. 238, 94 Pac. 294, the court said: "Except as limited or controlled by constitutional provisions, the General Assembly is omnipotent in relation to municipal corporations within the state. It calls them into being, and endows them with whatever powers and privileges they possess. If in its judgment advisable, their existence, even, may at any time be absolutely terminated. In these and other particulars it bows only to the superior behests of the people expressed in their organic law."

In Texas, the legislature conferred on cities certain powers relative to the "recall," and the supreme court of that State, in *Bonner* v. *Belsterling,* 138 S. W. 571, held, that except as limited by the Constitution of the United States and the constitution of the State of Texas, the legislature could confer upon municipal government any power that it might see fit to give.

There seems to be no question but that the legislature may delegate to a municipality power to regulate by ordinance subjects which are already covered by statute. See *Theisen* v. *McDavid,* 34 Fla. 440; 26 L. R. A. 234, 16 So. 321; *Hood* v. *Von Glahn,* 88 Ga. 405, 14 S. E. 564; *Re Jahn,* 55 Kans. 694, 41 Pac. 956; *Rogers* v. *Jones,* 1 Wend. 237; *Brooklyn* v. *Toynbee,* 31 Barb. 282; *Ex parte Douglass,* 1 Utah 108.

A municipal by-law enacted pursuant to a special charter authority has the same force and effect as a law within the municipal boundaries as though it had been enacted by the

general assembly. *McCormick* v. *Columbia Electric St. Ry. Light & Power Co.,* 85 S. C. 455, 67 S. E. 562.

A territorial case, *Burmeister* v. *Howard,* 1 Wash. Ter. 208, 215, states the matter as follows: "Municipal ordinances are akin to legislative enactments; a municipal corporation resembling a legislature, their charter representing the constitution of a state, an *imperium in imperio,* and therefore those ordinances within the sphere of their charter have all the force of statutes and within the limits of its authority all persons are bound by the acts of the corporation."

As the question must be examined solely in the light of the intention of the legislature, if that intention is clear, a municipality may have the right to pass ordinances upon specific subjects even though such ordinances are inconsistent with existing statutes, and nullify or supersede them. The courts, however, generally, unless the intent of the legislature is so clearly expressed as to be beyond question, sustain both the statute and the ordinance, although they may be in conflict. One line of decisions holds that there is a concurrent jurisdiction, and that a conviction under an ordinance is a bar to a prosecution under a statute, and vice versa. Another line of authorities holds also that the jurisdiction is no bar to a prosecution under the other, the theory being that although the acts are the same there are in fact two offenses separate and distinct, one against the dignity of the state and the other against the dignity of the municipality. In the case at bar, however, we are not required to express any opinion as to which of these theories is the correct one, because there is no attempt to carry on more than one prosecution at this time, nor has it been suggested that the defendant has already been prosecuted under any other statutory authority. It will be time enough to decide the questions suggested when they come properly before us.

In *Hall* v. *Dunn,* 52 Ore. 475, 25 L. R. A. (N. S.) 193, 198, 200, it appears that the statute involved contained a provision that the municipality might enact ordinances concern-

ing a particular subject, "Irrespective of any general law of
the state upon the subject." The legislative assembly passed
a law on February 7, 1905, repealing the act of incorporation
of Medford, and granted a charter in lieu thereof. The later
act conferred upon the common council the power "To license,
tax, regulate or prohibit barrooms, drinking shops, billiard
rooms, bowling alleys, dance houses, and all places where spir-
ituous, malt or vinous liquors are sold or kept for sale, irre-
spective of any general law of the state on this subject, enacted
by the legislature or by the people at large: Provided, that no
license for the sale of spirituous, malt or vinous liquors shall
be granted for any less amount than is or may be provided
by the general laws of the state in force at the time of the
granting thereof. Held, that the re-enactment by the legisla-
ture of a clause of a municipal charter after the passage of
a general law in conflict therewith will have the effect of re-
establishing it, if to the provisions is added the clause 'Irre-
spective of any general law of the state upon the subject.' "
The clause, "irrespective of any general law of the state upon
the subject," just quoted, is substantially the same, in mean-
ing, as the statutory provisions of 1909, above referred to.

A section in the charter of an Indiana city gave to the com-
mon council exclusive power over streets, etc. The supreme
court of Indiana in the case of *Wood* v. *Mears,* 12 Ind. 515,
after recognizing that if the authority is sufficient municipali-
ties may pass ordinances conflicting with statutes, says: "This
section confers upon the common council plenary powers over
the streets and alleys of the city. * * * In the language of
Harris, J., in the case of *Milhau* v. *Sharp,* 17 Barb. 437,
* * * 'In this respect it (the municipality) is endowed with
legislative sovereignty: The exercise of that sovereignty has no
limits so long as it is within the objects and trusts for which
the power is conferred.' "

A general discussion of the subject as to the power of
municipalities, operating under the so-called general welfare

clause, as well as those operating under special authority, will
be found in 2 Dillon on Municipal Corporations, (5th ed.)
§§630-634; 28 Cyc. 365-368.   See also, *In re Sic,* 73 Cal.
142; *State* v. *Preston,* 4 Idaho 215; *Bennett* v. *People,* 30
Ill. 389; *Siebold* v. *People,* 86 Ill. 33; *City of Seattle* v. *Chin
Let,* 19 Wash. 38; *Ex Parte Pfahler,* 150 Cal. 71, 11 L. R.
A. (N. S.) 1092; *City of Bellingham* v. *Cissna,* 44 Wash.
397; *State* v. *Ludwig,* 21 Minn. 202; *Brooklyn* v. *Toynbee,*
31 Barb. 282; *Wightman* v. *State,* 10 Ohio 452; *Berry* v.
*People,* 36 Ill. 423; *Ehrlick* v. *Com.* (Ky.) 102 S. W. 289,
10 L. R. A. (N. S.) 995; *In re Henry,* 15 Idaho 755, 21 L.
R. A. (N. S.) 209; *Shafer* v. *Mumma,* 17 Md. 331; *Gard-
ner* v. *People,* 20 Ill. 430; *Rice.* v. *State,* 3 Kan. 141; *Bowles*
v. *District of Columbia,* 22 App. D. C. 321.

The cases cited by the defendant upon this phase of the case
do not sustain his contention: In *Landis* v. *Borough of Vine-
land,* 54 N. J. L. 75, the court merely held that an ordinance
which provided a penalty inconsistent with the penalty pre-
scribed in the charter was void.   In *Washington* v. *Hammond,*
76 N. C. 33, the court held that municipal ordinances and by-
laws must be in harmony with the general laws of the state,
but also said: "The question does not arise in our case whether
the state may not expressly confer upon a municipal corpora-
tion the power to pass local laws which should exclude the gen-
eral laws of the state on particular and enumerated subjects.
By-laws and state laws may stand together, if not inconsistent,
and possibly the same act may constitute an offense both against
the state and municipal law and both may be punished if the
by-law is strictly a police regulation only."

In *State* v. *Langston,* 88 N. C. 692, the court held that "A
general grant of power, such as a mere authority to make by-
laws, or to make by-laws for the good government of the place,
and the like, should not be held to confer authority upon the
corporation to make an ordinance punishing an act; for ex-
ample, an assault and battery, which is made punishable as a

criminal offense by the laws of the state. 1 Dill. on Mun. Corp. §302. The power conferred upon the municipal body is presumed to be in subordination to a public law regulating the same matter for the entire state, unless a clear intent to the contrary is manifest." The doctrine thus enunciated is recognized by all the authorities. The case simply marks the clear distinction between general and special powers of municipalities. 1 Dill. on Mun. Corp. (4th ed) p. 395, has no bearing upon this question. *Haywood v. Mayor,* 12 Ga. 410, involved the construction of an ordinance passed under a general power, and has no application as an authority in the case at bar. *King v. Company of Barber Surgeons,* 91 Eng. Rep. (full reprint) 1291, involved the question of a violation by the united barbers and surgeons of an express provision of their charter, and, of course, has no application in this case. In *State v. Fourcade,* 13 So. 187, as well as in *McInerney v. City of Denver,* 29 Pac. (Colo.) 516, it was held that the legislature may delegate to municipalities power to enforce and adopt ordinances of special local importance, though general statutes exist; that the same act may constitute two offenses, and that the municipality and the state may both punish without violation of the constitutional inhibition against placing one twice in jeopardy for the same offense. 2 Dill. on Mun. Corp. (5th ed.) §§587, 589, 602, 607, which he cites, covers various phases of the questions which have arisen, and sheds much light upon questions involved in this case. He also, in his reply brief, cites a number of cases upon the following propositions, that an ordinance of the City and County of Honolulu would be void: (1) when in conflict with the Constitution of the United States; (2) when in conflict with the Organic Act; (3) when in conflict with the statutes of the Territory; and (4) when in conflict with fundamental principles. The ordinance before us, as we have already pointed out, except as to the third proposition, is free from the objections mentioned. As to the third proposition, we have disposed of

that question on the ground that it is immaterial whether the ordinance is in conflict with the statutes of the Territory or not. Therefore, the authorities cited have no application to the case before us.

In conclusion it may be observed, that the territorial legislature, pursuant to congressional authority, having expressly empowered the City and County of Honolulu to make and enforce all necessary ordinances covering all local police matters, to protect health, life and property, to preserve and enforce the good government, order and security of the inhabitants thereof, to regulate and control for any and every purpose, the use of the streets, highways, public thoroughfares, public places, alleys and sidewalks therein, to prescribe fines, forfeitures and penalties for the breach of any ordinance, not to exceed the amount of five hundred dollars or six months' imprisonment, or both, and having also expressly enacted, that "no ordinance shall be held invalid on the ground that it covers any subject or matter embraced within any statute or statutes of the Territory whether such ordinance is in conflict with any such statute or statutes or otherwise," it follows, therefore, that ordinance No. 11 of the City and County of Honolulu is valid.

The judgment of the district magistrate is affirmed.

*F. W. Milverton, Deputy City and County Attorney (J. W. Cathcart, City and County Attorney,* with him on the brief), for the Territory.

*Thompson, Wilder, Watson & Lymer* for defendant submit the case on a brief.