## TERRITORY OF HAWAII *v.* J. A. KUA.

APPEAL FROM DISTRICT MAGISTRATE OF HONOLULU.

ARGUED NOVEMBER 9, 1914.          DECIDED NOVEMBER 21, 1914.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

CONSTITUTIONAL LAW—*statutes—title.*

Section 45 of the Organic Act which provides "That each law shall embrace but one subject, which shall be expressed in its title," has the force and effect of a constitutional provision which is mandatory.

STATUTES—*title of amendatory act.*

Where the title to an act amending a certain section of a certain chapter of the Revised Laws expresses one branch or phase of the subject treated in such chapter, the amendatory act is thereby restricted; and, a proviso therein relating to a subject separate and distinct from that expressed in its title, is void.

SAME—*misleading title.*

The title to Act 99, Laws 1913, reads: "An Act to Amend Section 1323 of the Revised Laws as Amended by Act 151 of the Laws of 1909, Relating to the Issuance of Licenses;" the body of the act contains a proviso relating to the payment of personal and property taxes. Held, that the said title is misleading in so far as the matter contained in said proviso is concerned, the same not being related to, nor allied with, the subject expressed in the title.

OPINION OF THE COURT BY QUARLES, J.

(Robertson, C. J., dissenting.)

The defendant was convicted in the district court of Honolulu upon the charge of driving a hack without first obtaining a license as required by section 1418, R. L., fined $3, and appealed to this court upon points of law which are fully set forth and stated in the notice and certificate of appeal. The points of law relied on, so far as the statute under consideration is affected by the Fifth and Fourteenth Amendments to the Federal Constitution, were considered and determined in the case of *In re Kalana,* ante p. 96, for which reason it is unnecessary to

discuss them here.　In the *Kalana* case we held the last proviso
of Act 99, S. L. 1913, amending section 1323, R. L., not invalid
by reason of any of the objections there urged against it.　In
the case at bar other objections are made against the validity of
the proviso, which we summarize and arrange as follows, to wit:
(1) The subject covered by the said proviso is separate and dis-
tinct from the subject covered by the title and object of the act;
(2) The said proviso as an enactment "is oppressive and un-
reasonable;" (3) The said proviso is void for the reason that
it confers judicial powers upon the tax assessor and collector
in that he is under it the judge of the amount of taxes due,
especially, as in the case at bar, where there is a dispute between
him and the taxpayer as to the amount of taxes due.

　　Is the act in question violative of section 45 of the Organic
Act?　Said Act 99, S. L. 1913, is as follows:　"An Act to
Amend Section 1323 of the Revised Laws as Amended by Act
151 of the Laws of 1909, Relating to the Issuance of Licenses.
Be it Enacted by the Legislature of the Territory of Hawaii:
Section 1.　Section 1323 of the Revised Laws, as amended by
Act 151 of the Laws of 1909, is hereby further amended so as
to read as follows: 'Section 1323.　Signed by whom.　Every
license shall be signed by the Treasurer of the County or City
and County, within which the license is to be operative, and
impressed with the seal of his office.　Such seal shall be as de-
termined by the Board of Supervisors.　Provided, that any
license which authorizes the licensee to do business throughout
the Territory shall be signed by the Treasurer of the County or
City and County in which the principal office of the licensee
is situated; and provided further, that no license shall be so
issued until the applicant therefor shall have filed with the
Treasurer of the County or City and County a certificate show-
ing the payment in full of all taxes due from said applicant on
the date of said application.' "　Section 45 of the Organic Act
is as follows:　"Sec. 45.　That each law shall embrace but one
subject, which shall be expressed in its title."　This provision,

which has the force and effect of a constitutional requirement, is similar to that found in various state constitutions and is universally held to be mandatory by the state courts, with the exception of those of California and Ohio. A similar provision was found in the constitution of Hawaii under the Monarchy, the word "object" being used instead of "subject," and was held to be mandatory in the case of *Marchant* v. *Marchant,* 3 Haw. 661, where the court said of it: "The Court regards this provision of the Constitution as mandatory, and the disregarding of it by the Legislature renders any of these enactments in which it may be disregarded, nugatory." The identical provision under consideration was contained in the constitution of the Republic of Hawaii in article 63. To determine the question now being considered we must search in the title and object of the statute for the subject thereof. In its title we find that it is to amend section 1323, R. L., "Relating to the Issuance of Licenses." The subject upon which the legislature proposed to legislate was, as expressed in the title, a matter relating "to the Issuance of Licenses," and, as shown by the sub-title, head note and catch words, "Signed by whom," related not to the substance of the license, but to the particular person or officer who should sign the same. There is nothing in the object of the act, down to and including the first proviso, which relates to anything other than the person or officer who shall sign licenses. It is a well established rule that the title of an act, under the constitutional requirement aforesaid, may be broader than the act without violating such constitutional requirement. It is an equally well settled rule that the title, if restricted, must be the standard to determine the scope of the act, and that the act cannot be broader than its title. In other words, the title fixes the bounds of the act, beyond which the legislature may not go. "If a restrictive title is chosen the act must be kept within it." (1 Lewis' Southerland, Stat. Const., Sec. 117.) Section 1323, R. L., before and after its amendment, was and is a part of chapter 102 of the Revised Laws relating to "Licenses." We

note the history of this particular statute (now section 1323, R. L.) as follows: By act of June, 1888, all licenses issued were to be signed by the "Minister of the Interior or the Chief Clerk of the Interior Department," which was continued under the Republic (P. L., Sec. 847), and under the territorial regime (Sec. 1323, R. L.). It was amended by Act 151, S. L. 1909, to read as follows: "Section 1323. Signed by whom. Every license shall be signed by the Treasurer of the County within which the license is issued to be operative and impressed with the seal of his office. Such seal shall be as determined by the Board of Supervisors. Provided, that any license which authorizes the licensee to do business throughout the Territory shall be signed by the Treasurer of the County in which the principal office of the licensee is situated." This statute was continued in this form until amended by Act 99, S. L. 1913, hereinbefore quoted. It will thus be seen that the amendment of section 1323, R. L., made by said Act 99, S. L. 1913, consisted in providing that licenses shall be issued by the treasurer of the county or city and county, and in adding the last proviso requiring the certificate showing the payment of all taxes due to date from the applicant. Was this last proviso germane to section 1323, R. L., or to the subject of "Issuance of Licenses"? The chapter (102) in which section 1323 is found appears to have been enacted as police measures to protect the public against extortion and to restrain or control those engaged in the various occupations licensed, hence must be regarded as police regulations and not revenue measures. This court, speaking through Mr. Justice Watson in the *Kalana* case, supra, shows that the statute, or rather the sections of chapter 102, R. L., relating to drivers of vehicles, were enacted in the exercise of the police power, while the amendment in the shape of the last proviso—the one under consideration—can only be regarded as an exercise of the power of taxation as contradistinguished from the police power. What natural or logical connection has the collection of taxes that are past due with the

issuance of licenses or the police control of the several occupations licensed, or with the personnel of the particular officer who shall sign the license when it issues? It is apparent that this last proviso, a measure for the collection of taxes past due, in itself a furtherance of the power of taxation, was engrafted into and made a part of a purely police measure. The two powers are separate and distinct. The two subjects,—that of licensing occupations for police purposes, and that of taxation, are also separate and distinct. It is true that a statute may be enacted which is in the exercise of both the police and taxing powers, but it must relate to but one subject and that subject must be expressed in the title of the statute.

Is not the collection of taxes, at which the amendment or proviso under consideration was directed, a subject-matter separate and distinct from the regulation of occupations by license under the police power? How is the efficiency and competency of a hack-driver affected either one way or the other by the fact of his having paid or not having paid taxes assessed against him in the past? Are the lives and limbs of those who ride in the hack driven by him any safer by his having paid all the taxes which he owes to the government? If so, then it would be just as logical and just as reasonable to say that the lives and limbs of passengers are safer in a hack driven by a driver who has paid his private debts than they would be in a hack driven by a driver who has not paid such private debts. It seems palpable that the payment of a debt, whether it be a public one in the shape of a tax assessed, or a private one made by contract, is a subject-matter separate and distinct from the regulation of an occupation or the issuance or signing of a license issued in furtherance of the exercise of the police power of the government. If this be true the last proviso to Act 99, S. L. 1913, requiring the payment of all taxes as a prerequisite to procuring a license to drive a hack or to carry on any of the occupations licensed by chapter 102, R. L., as amended, is not germane to the title or object of said act, but is an independent

matter or subject interpolated therein for the purpose of assisting the government in the collection of taxes due it, and the said last proviso violates section 45 of the Organic Act, and is void.

In our opinion, the payment of taxes, whether delinquent or not, is a subject separate and distinct from the issuance of occupation licenses. The legislature here has sought to make such payment a condition precedent to the issuance of a license, and therefore there is some ground for contending that it is germane to the subject expressed in the title to Act 99, S. L. 1913. But under the guise of exercising one power—the regulation of occupations by license—may the legislature impose the condition of performing an act separate and distinct from the conduct of any occupation, as it has attempted here? If so, the evils intended to be avoided by section 45 of the Organic Act may not be avoided and such provision is impotent and the legislature may do, by indirection, that which the Organic Act directs it shall not do.

In the case of *Dolese* v. *Pierce,* 124 Ill. 140, it was held that an act purporting to amend certain sections of a former act must be restricted to the subject covered by such former sections, the court, on pages 146, 147, saying, *inter alia,* as follows:

" * * * The act of 1874, as appears from its title, extends to a revision of the entire law then existing, relating to township organization, while that of the act of 1887 is expressly limited to the amendment of certain specified sections of the law as revised by the former act. This being so, it is clear that the scope of the act of 1887 is limited by the subject matter contained in the amended sections before amendment, for to introduce any new substantive matter not germane or pertinent to that contained in the original sections, could, in no proper sense, be regarded as· an amendment of them, but would manifestly be additional, independent legislation upon a matter not embraced in the title of the act, and consequently void.

"The amendment of an act in general or of a particular section of an act, *ex vi termini,* implies merely a change of its pro-

visions upon the same subject to which the act or section re-
lates.    These propositions are so elementary in their character
as to require neither argument nor citation of authority in their
support. * * *

"It is said, however, that legislation affecting the boundar-
ies of cities and villages is germane to that affecting the bound-
aries of townships.    But counsel have failed to tell us in what
way or sense the one is germane to the other, or what meaning
they attach to that term in giving a construction to the provision
of the constitution in question.    Literally, 'germane' means
'akin,' 'closely allied.'    It is only applicable to persons who are
united to each other by the common tie of blood or marriage.
When applied to inanimate things, it is, of course, used in a
metaphorical sense, but still the idea of a common tie is always
present.    Thus, when properly applied to a legislative provision,
the common tie is found in the tendency of the provision to
promote the object and purpose of the act to which it belongs.
Any provision not having this tendency, which introduces new
subject matter into the act, is clearly obnoxious to the constitu-
tional provision in question."

There is no close alliance between the payment of a property
tax and the license and regulation of an occupation.    The one
is a police measure, while the other is a revenue measure, as is
clearly shown in the *Kalana* case, supra.    The original section,
amended by Act 99, S. L. 1913, related solely to the subject
concerning what particular officer should issue an occupation
license.    .That is the subject to which the amendment must be
restricted.    The addition of the proviso requiring the payment
of all taxes due from the applicant for the license is a new and
independent matter, disconnected from the question as to who
shall issue the license, and, therefore, is not germane to the
subject of the act.    The payment of personal and property taxes
is a subject independent and disconnected from any of the sec-
tions of chapter 102 of the Revised Laws.    The only matter
added to section 1323, R. L., by Act 99 S. L., 1913, is that re-
lating to the duties of the treasurer of the county or city and
county, other than said last proviso.    If the title had read, "An

Act to amend Chapter 102 of the Revised Laws, relating to Licenses," the question would be entirely different. The title of Act 99, S. L. 1913, is not as broad as that of chapter 102, R. L., which is "Licenses," but is restricted to the "Issuance of Licenses."

But, as we have pointed out, the original section, both before it was compiled into the Penal Laws, and since, with the various amendments, heretofore related only to the personnel of the officer signing the license, and so long as it did so it was clearly embraced within the subject expressed in the title to Act 99, S. L. 1913.

The rule enunciated in *Dolese* v. *Pierce,* supra, was approved in the following cases: *Village of Hyde Park* v. *City of Chicago,* 124 Ill. 156; *Donnersberger* v. *Prendergast,* 128 Ill. 229; *McGurn* v. *Board of Education,* 133 Ill. 122; *City of East St. Louis* v. *Rhein,* 139 Ill. 116.

The rule explicitly laid down in the case of *Dolese* v. *Pierce,* supra, is recognized in *Hyman* v. *Kapena,* 7 Haw. 76. The statute there involved was an act amending the act of 1878, entitled, "An Act to Amend an Act entitled 'An Act to Increase the Import Duties upon Certain Goods, approved the 27th day of September, 1886,'" the title of the amendatory act reading, "An Act amendatory of Chapter XXVIII. of the Session Laws of 1878, relating to import duties upon wines." In the body of said amendatory act the legislature assumed to increase the duties upon cigars, cheroots, and articles other than wine. The act was held unconstitutional in so far as the act related to the import duties on all goods other than wines, the court saying:

"Article 77 of the Constitution reads: 'To avoid improper influences which may result from intermixing in one and the same Act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title.' A like article is found in the constitution of a majority of the States of the American Union, some of them using the term *one subject,* and some *one object.* The purpose of this provision is, first, to prevent *hodge-podge* or *log-rolling*

legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles give no intimation; and third, to apprise the people of proposed matters of legislation. See Cooley's Const. Limitations, p. 143.

"It is clear that the title in the present case is misleading, and would frustrate the second or third objects above proposed. It is declared by this title that the law intended to be amended is one relating to import duties upon wines, and inferentially upon wines only. When the Act is read by its title, this matter is what is presented to the attention of the Legislature. Without the words 'relating to import duties upon wines,' the title describes an Act amending a specified Act of 1878, whatever subjects may be included in it; but these words being added must be considered to restrict the scope of the Act and of the amendment. Says Cooley, at page 149 of the work cited above: 'The Courts cannot enlarge the scope of the title; they are vested with no dispensing power; the Constitution has made the title the conclusive index as to what shall have operation; it is no answer to say that the title might have been made more comprehensive, if in fact the Legislature have not seen fit to make it so.'

"The error in this title is not in its insufficiency. As an amendatory Act, it might be considered sufficient if it only referred to an original Act having a title properly describing the subject matter. See *State* vs. *Ranson,* 73 Mo., 78, referred to at page 153 U. S. Digest, New Series, Vol. 13. In the case before us the title goes beyond such reference, and wrongly describes the Act referred to and the matter amended.

"The Act being broader than the title does not, however, render the Act unconstitutional as to the subject expressed in the title, when that is separable from matters which are extra the title. Cooley's Const. Lim., page 148; *Re Metropolitan Gaslight Co.,* 85 N. Y. 526; *Dewhurst* vs. *Allegheny City,* 95 Pa. St., 437.

"The Act is good as to the duties mentioned upon wines. It is unconstitutional in respect to the added duties on cigars and cheroots."

In the title of Act 99, S. L. 1913, the broad subject of "Licenses" is restricted to the ministerial act of issuing or giving them out. The word "issuance" is not defined by Anderson's

or Bouvier's Law Dictionaries, nor in Words and Phrases. Webster's Dictionary defines it as a noun thus: "Act of issuing, or giving out; issue; as, the issuance of an order or of rations." Now, the ministerial act of giving out a license to follow an occupation is not akin nor allied to the act of paying personal or property taxes. The title in question is misleading. Section 1323, R. L., named therein, relating to the subject of the personnel of the officer who shall sign licenses, and the payment of a tax, delinquent or not delinquent, being no part of the act of issuing or giving out a license, and the conditions upon which licenses are to issue being prescribed in the other sections of chapter 102, R. L., no one would be able to read the title to Act 99, S. L. 1913, and get any intimation therefrom that said act contained a requirement that an applicant for a license should first pay all taxes assessed against him before making his application for a license.

In *Rouse* v. *Thompson,* 228 Ill. 522, it was held that the title, "An Act to Provide for the Holding and Regulation of Primary Elections of Delegates to Nominating Conventions, for the Holding of such Conventions, filling Vacancies and fixing Penalties for the violation of the Provisions thereof," did not embrace a general provision in the body of the act authorizing direct primary voting for particular candidates.

In the case of *Sewickley Township* v. *Sholes,* 118 Pa. 165, the subject of an act, as expressed in its title, was, "An Act to exempt from taxation public property used for public purposes." The act contained a proviso to the effect that all property not exempt should be subject to taxation. The court held the proviso void for the reason that it was not embraced in the title which showed a purpose to exempt from, and not make subject to, taxation.

In the case of *Hatfield* v. *Commonwealth,* 120 Pa. 395, the subject embraced in the title of the act involved was to prohibit the issuance of licenses within certain bounds and the first section so provided. The second section went further and prohibit-

Territory v. Kua, 22 Haw. 307.

ed sales within such bounds, and it was held void as not expressed in the title.

Holding, as we do, the said last proviso of Act 99, S. L. 1913, to be in violation of section 45 of the Organic Act and void, it is unnecessary to discuss or decide the other points upon which said proviso is attacked.

It is argued on behalf of the Territory that if the proviso to Act 99, S. L. 1913, under consideration, be void, the defendant was relegated to his remedy of mandamus to compel the issuance of the license for which he applied and tendered the fee, and was properly found guilty of violating section 1418, R. L., in that he drove a hack without the required license. We take the contrary view. Having tendered the required fee for the license and a certificate, showing his examination and qualifications, made by the sheriff, he did all that he could do to obtain such license and was entitled to proceed with his usual occupation of driving a hack. This point is settled and well stated in the case of *Royall* v. *Virginia,* 116 U. S. 572.

Query: If Act 99, S. L. 1913, be enforced in its entirety, would it not deprive those engaged in the occupation for which the license is required of the privilege accorded to all taxpayers by section 1264, R. L., as amended by Act 97, S. L. 1905, and as further amended by Act 146, S. L. 1911, of paying one-half of their taxes May 15, and the other half November 15, of each year? By the provisions of section 1183, R. L., as amended, all taxes are assessed as of and due January 1 of each year. Now the proviso under consideration is not limited to the payment of delinquent taxes, but requires the payment of all taxes due, which would include those assessed for the year in which the application for a license is made. This would seem to deny one in a licensed occupation the right and privilege aforesaid. But whether this of itself would be sufficient to avoid the proviso we deem it unnecessary to consider or to determine.

The judgment appealed from is reversed and the cause re-

Territory v. Kua, 22 Haw. 307.

manded to the district court of the city and county of Honolulu with directions to enter a judgment discharging the appellant.

*P. L. Weaver, Deputy City and County Attorney,* for the Territory.

. *E. K. Aiu* for defendant.

### DISSENTING OPINION OF ROBERTSON, C. J.

I am obliged to dissent. The cases referred to in the majority opinion, do not, in my judgment, sustain the conclusion to which they are cited. They purport to be and are in harmony with principles heretofore recognized by this court to the effect that the organic provision that "each law shall embrace but one subject, which shall be expressed in its title" should receive a liberal construction in favor of legislation (*In re Walker,* 9 Haw. 171; *Dole* v. *Cooper,* 15 Haw. 297; *Ahmi* v. *Buckle,* 17 Haw. 200) and that it is sufficient if the various parts of an act have a natural connection, are fairly well embraced in one subject, though somewhat general, and expressed in a title which is sufficiently comprehensive and not misleading (*Dole* v. *Cooper,* supra; *Territory* v. *Dondero,* 21 Haw. 19).

In *Dolese* v. *Pierce,* 124 Ill. 140, it was held that an amendment to a statute relating to "township organization" whereby an attempt was made to change the boundaries of "cities and incorporated villages" was held to conflict with the constitutional provision for the all sufficient reason, as explained by the court, (p. 148) that "while townships are regarded as municipal corporations, in the general sense of that term, yet they stand upon a plane altogether different from that occupied by cities and villages. * * * They are, in law and in fact, as distinct from one another as any two artificial beings could be, whatever their supposed resemblances may be." In *Hyman* v. *Kapena,* 7 Haw. 76, it was held that an act entitled "An Act amendatory of section 2 of Chapter XXVIII of the Session Laws of 1878, relating to import duties upon wines" would not permit the

including of a provision fixing a duty upon cigars. The reason is obvious, and there can be no question as to the correctness of the decision. The other cases cited are as easily distinguished.

In *Carter County* v. *Sinton,* 120 U. S. 517, 522, a Kentucky case was approvingly quoted as follows: "This prohibition should receive a reasonable and not a technical construction; and looking to the evil intended to be remedied, it should be applied to such acts of the legislature alone as are obviously within its spirit and meaning."

That a statute providing that no license shall be issued until the applicant therefor shall have filed with the treasurer a certificate showing the payment in full of all taxes due from said applicant, is an act "relating to the issuance of licenses" is so clear that the mere statement of the thing convinces. A license is nothing until it is issued, and it would seem that a title "relating to the issuance of licenses" is practically as broad as one "relating to licenses." In *Republic* v. *Akau,* 11 Haw. 363, 369, this court said "In a statute relating to certain licenses it is proper to specify the conditions upon which the licenses may be granted."

It has been said that the real object of the legislature in enacting the amendment in question was to reach delinquent taxes. That is conceded, but, as pointed out in *Lien* v. *County Commis.,* 80 Minn. 58, 64, "It is not fatal that the objects and purposes of the act are not expressed in full in the title. Our constitution does not require the title of an act of the legislature to be so broad. It requires the subject of each act to be so expressed but not the 'purposes' or 'objects' of the proposed statute. The objects of an act may not always appear from the subject as expressed in the title." See also *State* v. *Cantwell,* 179 Mo. 245, 260. It may also be conceded that the amendatory act could appropriately have been given a title with reference to the collection of taxes, but the rule is that where an act may properly be entitled under either of two subjects it is sufficient if it be entitled under one of them. *Hoskins* v. *Crabtree,*

103 Ky. 117. To hold that the title "relating to the issuance of licenses" must be held to confine the subject to the ministerial act of giving out licenses is, it seems to me, to give the organic provision the opposite of a "liberal" construction. "A critical construction will not be made of the title to hold a statute unconstitutional, but on the contrary the language used is in all cases given a liberal interpretation and the largest scope accorded the words employed that reason will permit in order to bring within the purview of the title all the provisions of the act." *State* v. *Closser,* 179 Ind. 230, 235. "To construe it strictly would, by hampering legislation, cause as great evil in one direction as was intended to be prevented in the other direction." Per Frear, J., in *In re Walker,* supra.

Section 1323 is a part of chapter 102 on "Licenses," and is included, with other sections, under the sub-head "General Provisions." It would seem to be a highly suitable place in which to place a new general provision such as that in question, and I think it is of small moment that it was incorporated as a proviso to that section instead of being made a separate new section. The catch phrase to the section, introduced by the code commission, "Signed by whom," is, strictly, not a part of the section, and should not be regarded as forever limiting the subject matter of the section. The purpose of the amendment of 1913 was to enlarge the scope of section 1323, and the title of the amendatory act was appropriate and sufficient, as I believe, to accomplish that effect.

Under a title amending a certain act and stating its title any alteration may be made and any provision may be enacted which might have been incorporated in the original act. 1 Lewis, Southerland, Stat. Con. (3d ed.) Sec. 137; *Edler* v. *Edwards,* 34 Utah 13, 19; *Holden* v. *Supervisors,* 77 Mich. 202. In such case it matters not that the new matter is not cognate to the section amended. *State* v. *Madson,* 43 Minn. 438, 442. An act to amend a section of a code or revision is sufficient if it specifies the section to be amended without giving the title

to which it belongs or in any way indicating the subject matter of the section. Under such a title any legislation is proper which is germane to the section specified. 1 Lewis, Southerland, Stat. Con. Sec. 141. But the rule that when the title of an act is to amend a particular section by number the proposed amendment must be germane to the subject matter of that section applies only when there is nothing else in the title to indicate the subject of the legislation. *State* v. *Barton,* 91 Neb. 389. In the case at bar the title of the amendatory act not only gave the number of the section amended but also stated the subject of the act.